SCOTT N. SCHOOLS (SCSBN 9990)
United States Attorney

JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
Assistant United States Attorney

DENNIS M. WONG (CSBN 173951)
Special Assistant United States Attorney

  450 Golden Gate Avenue, Box 36055
  San Francisco, California 94102-3495
  Telephone: (925)803-4760
  FAX: (415) 436-6748
  Email: dwong@bop.gov

Attorneys for Federal Respondent

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| JANICE CHAVEZ, | ) | No. C 07-3938-WHA |
| | ) | E-FILING CASE |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ANSWER AND OPPOSITION TO |
| | ) | PETITION FOR WRIT OF HABEAS |
| | ) | CORPUS |
| SCHELIA A. CLARK, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## I. INTRODUCTION & SUMMARY OF ARGUMENT

    Through a petition for writ of habeas corpus ("Petition"), petitioner Janice Chavez

("Petitioner") seeks to invalidate 28 C.F.R. § 570.21(a), which limits placement of Bureau of

Prisons ("BOP") inmates to community confinement to 10% of the inmate's sentence, not to

exceed six months.[1]  Section 570.21(a) will be referred hereinafter as the "10% Regulation."   In

other words, Petitioner requests consideration for community confinement in a Residential

---

    [1] 28 C.F.R. § 570.21(a) states: "[t]he Bureau will designate inmates to community
confinement only as part of pre-release custody and programming, during the last ten percent of
the prison sentence being served, not to exceed six months."

Reentry Center[2] ("RRC") for more than 10% of her sentence, up to the maximum of six months.[3]

Respondent opposes this petition for writ of habeas corpus for the following reasons: 1) this petition should be dismissed because Petitioner failed to exhaust administrative remedies, which is a prerequisite to bringing suit; s*ee Porter v. Nussle*, 122 S.Ct. 983, 992 (2002); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006);  2) this petition should be denied as Petitioner is not eligible for RRC placement as she is not within the last 10% of her sentence pursuant to 18 U.S.C. § 3624(c); and 3) as the 10% Regulation is a reasonable interpretation of § 3624(c) and should be afforded deference.  *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).  Furthermore, the 10% Regulation does not conflict with § 3621(b).

## II.   FACTS

### A.    Petitioner's Conviction & Sentence And Pertinent BOP Dates

On May 21, 2007, Petitioner was sentenced to 18 months of imprisonment for violation of 8 U.S.C. § 1224(a)(1)(A)(ii) & (v)(II), transportation of illegal aliens.  *See Exhibit 1* to Beakey Declaration, Judgment from *U.S. v. Janice Chavez*.  Petitioner was eventually designated to the Federal Prison Camp ("FPC") at Dublin, California, on June 22, 2007, to serve her sentence, where she is currently incarcerated.  *See Exhibit 2* to Beakey Declaration, Public Information Inmate Data printout for Petitioner.  Petitioner's Pre-Release Preparation date, which equates to her 10% date, is April 8, 2008.  *Id.* at 2.  Petitioner's projected release date is May 25, 2008.  *Id.*

On July 6, 2007, FPC Dublin staff set goals for Petitioner to begin her GED in July of 2007, and to begin participating in Narcotics Anonymous in August of 2007.  *See Exhibit 3 to* Beakey Declaration, Program Review Report.   At that time, Petitioner's unit team at FPC Dublin recommended a RRC placement date of April 9, 2008, the same as her 10% date.  *Id.*

---

[2] RRCs were formerly called halfway houses or community corrections centers.  *See Declaration of Kim Beakey* ("Beakey Declaration") filed in support of this Opposition.

[3] The date and point where an inmate reaches the last 10% of her sentence will be referred to as the "10% date."

**B.    Petitioner's Administrative Remedies**

Petitioner has not filed any administrative remedies on any issue, during her incarceration with the BOP.  *See Declaration of Cecilia Burks* ("Burks Declaration").  As a result, Petitioner has not exhausted her available administrative remedies.  *Id.*

**C.    Background On 28 C.F.R. § 570.21(a)**

Decisions about where federal prisoners should be housed are entrusted to the BOP.  18 U.S.C. §3621(b):

> The Bureau may designate [prisoners to] any available penal or correctional facility that meets minimum standards of health and habitability.

*Id.*  Whether a facility is appropriate or suitable depends on five criteria.[4]  *Id.*

Section 3624(c) states that:

> The Bureau of Prisons shall to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

Before December 13, 2002, the BOP would sometimes exercise its discretion to allow prisoners to serve all or part of the imprisonment part of their sentence in an RRC.  *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 240 (3d Cir. 2005).  After December 13, 2002, the BOP changed its practice and largely limited RRC placements for prisoners to the final 10% of their sentences or six months, whichever was shorter.  *Id.*  However, the First and Eighth Circuits held that the BOP policy change was unlawful because the plain language of §3621(b) gave the BOP discretion to transfer an inmate to an RRC at any time.  *See Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004); *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004).

Thereafter, the BOP implemented new regulations as an exercise of their discretion under § 3621(b).  Specifically, on August 18, 2004, the BOP proposed new regulations "announcing its categorical exercise of discretion for designating inmates to community confinement when serving terms of imprisonment."  69 Fed. Reg. 51, 213 (Aug. 18, 2004).  While acknowledging

---

[4] 1. resources of the facility; 2.nature and circumstances of the offense; 3. history and characteristics of the prisoner; 4. statements by the sentencing court; 5. pertinent policy statements issued by the Sentencing Commission.  *See*18 U.S.C. § 3621(b)(1) - (5).

the BOP's general discretion to place an inmate at an RRC at any time, the 2005 regulations limited RRC placement to the lesser of 10% of a prisoner's total sentence or six months, unless special statutory circumstances apply. *See* 28 C.F.R. §§ 570.20, 570.21. The final rules were published on January 10, 2005, and became effective on February 14, 2005. *Id.*

### III. THIS HABEAS PETITION SHOULD BE DISMISSED BECAUSE SHE  FAILED TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES

The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, *or any other Federal Law*, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (Emphasis added) 42 U.S.C. § 1997e(a).[5]  The Supreme Court explained the purpose behind the PLRA's exhaustion requirement:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. (Citation omitted). In other instances, the internal review might "filter out some frivolous claims." (Citation omitted). And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter*, 122 S.Ct. at 988.

Accordingly, there are broad-reaching reasons why exhaustion is required before filing a

---

[5] The PLRA exhaustion statute includes habeas petitions. *See Porter v. Nussle*, 122 S.Ct. at 992 ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life. . . ."). *See also id.* at 989 (". . . when the relevant section is read in its entirety, it suggests that Congress intended to authorize the nonconsensual reference of all prisoner petitions to a magistrate." *Ibid.* The Federal Magistrates Act, we noted, covers actions of two kinds: challenges to "conditions of confinement"; and "applications for habeas corpus relief." (citations omitted) Congress, we concluded, 'intended to include in their entirety th[ose] two primary categories of suits brought by prisoners.'"). Although *Porter* distinguished between habeas petitions that challenged "the fact or duration of confinement itself; and (2) those challenging the conditions of confinement," (*id.*) placement into a RRC has nothing to do with the fact or duration of an inmate's confinement as the inmate's release date is unaffected. *See* Beakey Declaration at 2. Instead, moving an inmate to a RRC is akin to transferring an inmate from one BOP location to another. *Id.*

1    lawsuit challenging prison conditions.   As Petitioner's habeas petition challenges the place

2    where she will serve her sentence, i.e., community confinement, the PLRA applies. *See* Porter,

     122 S.Ct. at 992; *see also Jones v. Bock*, 127 S.Ct. 910, 924-925 (2007).

3
          Allowing Petitioner to avoid exhaustion by assuming the BOP will deny her requested

4    relief will create an exception to the PLRA where none is allowed.  *See id.* at 990-91 (no more

5    distinctions between exhausting ongoing conditions versus specific acts).  Although Petitioner

6    states that she is "in the process" of exhausting her administrative remedies (*see* Petition at 3),

7    Petitioner has not even filed a single request for administrative remedy.   As result, this habeas

8    petition should be dismissed.

9    **IV.  PETITIONER  IS INELIGIBLE FOR RRC PLACEMENT UNDER THE 10%**
     **REGULATION AS SHE IS NOT YET WITHIN THE LAST 10% OF HER SENTENCE**
10
          Pursuant to 18 U.S.C. § 3624(c) and 28 C.F.R. § 570.21(a), Petitioner is serving a 15
11
     month sentence, and is therefore ineligible for RRC placement until she is within the last 10% of
12
     her sentence, which would not be until December 28, 2007. *See Exhibit 2 at 2* to Beakey
13
     Declaration.  As Petitioner's projected release date from BOP custody is February 4, 2008, she is
14
     currently eligible for community confinement for approximately five weeks.  *Id.*  This is entirely
15
     consistent with Petitioner's conviction and sentence of 15 months of imprisonment where the
16
     BOP has the discretion under 18 U.S.C. § 3621(b) to place an inmate accordingly.
17
     **V. THE 10% REGULATION IS A VALID EXERCISE OF THE BOP'S RULE-MAKING**
18     **AUTHORITY AND IS ENTITLED TO *CHEVRON* DEFERENCE**

19        **A.    Standard For *Chevron* Deference**

20        An agency's interpretation of a statute it is entrusted to administer is entitled to deference.

21   *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984);

22   *accord Smiley v. Citibank*, 517 U.S. 735, 739 (1996).  Agencies are accorded deference under

23   *Chevron* because of a presumption that "Congress, when it left ambiguity in a statute meant for

24   implementation by an agency understood . . . the ambiguity would be resolved, first and foremost

25   by the agency."  517 U.S. 735, 741.  A second presumption underlying an agency's entitlement to

26   deference is that Congress "desired the agency (rather than the courts) to possess whatever degree

27   of discretion the ambiguity allows." *Id.*

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In reviewing an agency's construction of a statute, courts apply the test set forth in *Chevron*. This test has two steps. A court must first determine whether Congress has directly spoken to the precise question at issue. *Id.* at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 843. If the statutory language is silent or ambiguous, deference is then to be afforded the agency's interpretation if it is based on a "permissible" construction of the statute. *Id.*

It does not require that an agency's construction be the only possible interpretation, just that it be a reasonable one. *Chem. Mfrs. Ass'n v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 125 (1985). If this threshold is met, a court must defer to and enforce the agency's interpretation, even if it is not the one the court would have chosen. *Fernandez v. Brock*, 840 F.2d 622, 631 (9th Cir. 1988). An agency's revised interpretation of a statute is entitled to deference, even if it departs, as the BOP did here, from a prior reading. *Id.* at 863. Agency interpretation is not "instantly carved in stone" and in order to complete its responsibilities effectively, an agency must "engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis." *Id.* at 863-864.

**B. The 10% Regulation Is Valid As It Represents The Most Reasonable Interpretation Of Sections 3621(b) And 3624(c) And Should Be Afforded *Chevron* Deference**

Section 570.21 of the BOP regulations interprets 18 U.S.C. §3624(c). That section states that the BOP "shall, to the extent practicable, assure that a prisoner spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." Since the BOP has determined that RRC placements are the vehicle for achieving this goal, this language states unambiguously that prisoners have no right to be considered for an RRC placement until they have finished 90% of their sentence. Seen from this point of view, the BOP's decision in the regulations to impose exactly this limitation is not

only a reasonable interpretation of the statute, but the only reasonable interpretation.[6]

The difference between the two sections is highlighted by the fact that §3621(b) is discretionary ("the Bureau may designate") while §3624(c) is mandatory ("the Bureau shall assure . . . a reasonable time not to exceed six months, of the last 10 per centum"). Section 3624(c) specifically states that a prisoner should not spend more than the lesser of 10% of his sentence or six months in a facility where he can re-enter the community. This is precisely what RRCs are for. Allowing a discretionary provision like §3621 to override this mandatory duty runs contrary to the common sense of these two provisions. To the extent that one of the two sections should prevail over the other, §3624(c) should prevail since it is mandatory while §3621(b) is discretionary.

The legislative history of §3621(b) also supports the construction that this section is limited to the question of which facilities are suitable and not when prisoners should be placed in them. The Senate Report states that the "Committee, by listing factors for the [BOP] to consider in determining the appropriateness or suitability of any available facility, does not intend to restrict or limit the [BOP] in the exercise of its existing discretion so long as the facility meets the minimum standards of health and habitability of [BOP], but intends simply to set forth the appropriate factors that the [BOP] should consider in making the designations." S.Rep. No.

---

[6] Although they are not binding on courts in this Circuit, some other circuits have found the BOP regulations invalid in light of the language of §3621(b). *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007); *Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005). Respondent believes that these opinions address the wrong issue since they focus on § 3621 and ignore § 3624. These two sections address two different concerns, and need to be considered separately. Section 3624 addresses the issue of when a defendant can be placed in an RRC. Section 3621 lists the factors that determine where the BOP should place or transfer an inmate after the decision to place or transfer him has already been made. The factors listed in §3621(b) come into play only when something triggers a placement decision and a suitable facility must be found. Section 3621(b) says nothing about when a prisoner's placement should be changed. Section 3624(c) on the other hand limits the BOP's ability to place a prisoner in pre-release status to the last 10% of his sentence. The BOP's decision to incorporate this requirement into its regulations therefore complements §3621(b), and does not in any way contradict it.

98-225, 98th Cong., 2d Sess. 142, reprinted in 1984 U.S. Code Cong. & Admin. News, 3182, 3325, quoted in *Cohen v. United States*, 151 F.3d 1338, 1343-1344 (11th Cir. 1998).  The BOP stated in the notice of its proposed rulemaking that it "carefully considered all of the statutorily-specified factors" in deciding to limit inmates' confinement in RRC's to the last ten percent of their sentences.  *See* Community Confinement, Proposed Rule, 69 Fed. Reg. at 51, 214 (August 18, 2004).  The February 2005 rules also make it clear the BOP continues to consider §3621(b)'s non-exhaustive list of factors when making placement decisions.  70 Fed. Reg. at 1660.  ("The Bureau will continue to evaluate these factors [§ 3621(b) factors] when making individual designations to appropriate facilities, and this rule will not adversely affect such individualized determinations").  Therefore, although the February 2005 rules limit the group of individuals whom the BOP will consider for RRC placement, the §3621(b) factors will be considered *when* that BOP chooses to consider them for RRC placement.

     This view is supported by the Ninth Circuit's decision in *United States v. Latimer*, 991 F.2d 1509, 1514-15 (9th Cir. 1993).  There, the Court reviewed the language of the Sentencing Guidelines and held that confinement in a halfway house is "qualitatively different from a sentence of imprisonment" and "does not constitute incarceration."  Nothing in §3621(b) requires the BOP to recognize an RRC as an acceptable substitute for a term of imprisonment and this Court would be going against the *Latimer* ruling if it were to hold that RRC's were generally intended, or even permissible, places for serving a sentence of imprisonment.  Although this case does not deal with the direct placement of a defendant into an RRC at the outset of a sentence, the *Latimer* case illustrates a fundamental flaw in how other courts have treated RRC's, particularly in the context of §3621(b).

     The BOP regulations are categorical in that they limit the class of prisoners who are eligible for RRC placement based on the amount of time they have left to serve and not on other factors individual to a particular prisoner.  In other words, the BOP does not consider the §3621(b) factors until an inmate is close to the time when he is within 10% of his sentence.  Only then does the BOP determine if a RRC facility is appropriate and available for him or her.  *See* 28 C.F.R. §570.20-21.  The BOP's ability to exercise its discretion in such a categorical manner

is supported by numerous cases holding that an agency may categorically exercise the discretion Congress has granted it by statute. *See Lopez v. Davis*, 531 U.S. 230, 233-234 (2001); *Warren v. Miles*, 230 F.3d 688, 693-694 & n.4 (5th Cir. 2000); *Wottlin v. Fleming*, 136 F.3d 1032, 1036 (5th Cir. 1998); *Yang v. INS*, 79 F.3d 932, 936 (9th Cir. 1996).

This case is very similar to *Lopez v. Davis*, 531 U.S. 230, a case discussing a different subsection of 18 U.S.C. §3621, §3621(e)(2)(B). In *Lopez*, the Court upheld a BOP rule that categorically eliminated some inmates from discretionary early release eligibility after successful completion of a drug treatment program. *Id.* Pursuant to 28 C.F.R. §550.58(a)(1)(iv)(B), inmates with certain prior convictions were categorically barred from early release eligibility. *Lopez* noted that §3621(e)(2)(B) was silent about how the BOP was intended to exercise its discretion and concluded that the BOP regulation "filled the statutory gap in a way that was reasonable in light of the legislature's revealed design." *Lopez*, 531 U.S. at 242. The Court explained that even where a statutory scheme requires individualized determinations, "the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority. *Id.* at 243-44, quoting *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612 (1991).

Just as §3621(e)(2)(B) vests broad discretion in the BOP to determine which individuals are candidates for early release, so too §3621(b) gives the BOP broad discretion in deciding where to designate inmates. The BOP's decision to restrict RRC placements to prisoners serving the last 10% of their sentences is a categorical expression of the BOP's discretion that does not differ fundamentally from the BOP's exercise of the same discretion under §3621(e)(2)(B). Both are examples of an agency relying on rulemaking to "resolve certain classes of issues," which *American Hospital Association* held is an appropriate exercise of agency authority.

Finally, it is important to note that most of the contrary authority from other circuits is based on the proposition that "§3624(c) has no bearing on whether [an RRC] may be considered as a place of imprisonment at some point earlier in a prisoner's period of incarceration." *Wedelstedt*, 477 F.3d at 1166. Thus, it is important to reemphasize that § 3624(c) clearly states that a prisoner's re-entry preparation period can be no longer than the shorter of 10% of his

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

sentence or six months. The basis of the contrary opinions therefore amounts to a decision that RRC's can be places of imprisonment as well as places which allow inmates to transition back to the community. RRCs are instead places for transition to normal life or, as the commonly used phrase would have it, halfway houses. Making this judgment is well-within the area of BOP expertise and the Court should show deference to it.[7]

## VI. CONCLUSION

Based on the foregoing, Respondent opposes this petition for writ of habeas corpus and requests that 1) this matter be dismissed for failure to exhaust administrative remedies, which is a prerequisite under the PLRA, or in the alternative, 2) an order denying this petition as Petitioner is currently ineligible for RRC placement under the 10% Regulation, and 3) as the 10% Regulation is valid as it is a reasonable interpretation of § 3624(c), and therefore, entitled to *Chevron* deference. The 10% Regulation does not conflict with § 3621(b) as the listed criteria are considered when the time comes, which is consistent with the discretionary language contained therein.

Dated: September 26, 2007                    Respectfully submitted,

                                             SCOTT N. SCHOOLS
                                             United States Attorney

                          By:    ____/s/_____
                                             Dennis M. Wong
                                             Special Assistant U.S. Attorney

_____

[7] Respondent notes that this same issue is currently on appeal before the Ninth Circuit *(Jose Rodriguez v. Smith*, Case No. 07-16014), before the First Circuit (*Muniz and Gonzalez v. Winn*, Case Nos. 06-2692/2693), and before the Sixth Circuit (*Marshek v. Eichenlaub*, Case No. 07-1246).

Respondent's Answer & Opposition
*Chavez v. Clark*, C-07-3938-WHA                    10

1

2                          **CERTIFICATE OF SERVICE**

3          The undersigned hereby certifies that she is an employee of the U.S. Department of

4    Justice, and is a person of such age and discretion to be competent to serve papers. The

5    undersigned further certifies that she is causing a copy of the following:

6    **ANSWER AND OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS**

7    **AND DECLARATIONS OF KIM BEAKEY AND CECILIA BURKS**

8    to be served this date upon the party in this action by placing a true copy thereof in a sealed

9    envelope, and served as follows:

10     __X__          **FIRST CLASS MAIL** by placing such envelope(s) with postage thereon fully

11                    prepaid in the designated area for outgoing U.S. mail in accordance with this office's
                      practice.

12     ____          **PERSONAL SERVICE (BY MESSENGER)**

13     ____          **FACSIMILE (FAX)**  Telephone No.:

14

15   to the parties addressed as follows:

16   Janice Chavez, Reg. No. 02742-298 (*pro se*)
     FPC Dublin
17   5675 8th Street
     Camp Parks
18   Dublin, CA 94568

19          I declare under penalty of perjury under the laws of the United States of America that the

20   foregoing is true and correct.

21          Executed this _26_ day of September, 2007, at Dublin, California.

22

23                                                      Maria Syed, Paralegal

24

25

26

27

28

Respondent's Answer & Opposition
*Chavez v. Clark*, C-07-3938-WHA